**DIGBIE, Estate of In Re; Appellant, v KNEPPER, Admr., Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4079. Decided February 16, 1948.

Benjamin F. Levinson, Columbus, for appellant.
William E. Knepper, Columbus, for appellee.

## OPINION

By HORNBECK, J.

This is an appeal from a judgment of the Probate Court against the appellant in the sum of Forty Thousand ($40,000.00) Dollars, with 10% penalty, upon a finding "that the said Mae Digbie has embezzled and is concealing from the estate of said decedent the sum of Forty Thousand ($40,000.00) Dollars." The amount of the judgment is $45,000.00, which the testimony tended to show the widow concealed, less $5000.00 of the money of decedent which she admitted she held.

There are six numbered errors assigned, which may be discussed under three headings:

First, That the finding and judgment of the court does not conform to the complaint or the statute;

Second, Error in considering certain evidence offered in support of the complaint; and

Third, That the finding and judgment is not supported by and is manifestly against the weight of the evidence and is predicated upon improper inferences.

We consider the second claim first and find no prejudicial error in the admission of testimony. As a matter of fact, there was little objection to the evidence as offered and all of it which could have any relation whatever to the complaint was properly admitted. The record is not confined to evidence germane to the complaint but relates to other questions pending before the Court but this procedure was followed apparently by common consent and nothing was developed which under the circumstances was prejudicial to appellant's cause.

The complaint avers that Mae Sue Digbie "has concealed or conveyed away monies, goods, chattels, etc., belonging to the estate of said decedent * * * as follows: Currency amounting to $45,000.00 and more, automobiles, automobile trucks". The judgment of the Court goes further than the complaint in finding in addition to the concealing of the assets of the estate that the appellant embezzled them. This additional finding was surplusage, not necessary to the judgment, but does not invalidate it.

Considerable is said in the brief of appellant about the uncertainty of the court in the finding but this conclusion is reached from the opinion of the trial judge and not from the judgment entry. There is no indecision in the finding and judgment entry and it conforms to the essentials constituting the offense under the statute, as does the complaint.

There is but one question of substance on this appeal, namely, the correctness of the judgment under the facts ap-

pearing. It is urged that there is no proof that the money, the subject of the concealment, was the property of the estate. It is true that there is no direct testimony to this effect but the inference is clear. The widow denies any knowledge of the money and therefore makes no claim whatever to it. Charles Digbie, who was associated with decedent in his lifetime in business, makes no claim to the money. It was found on the premises used as a place of business by the decedent in his lifetime and under circumstances, which we hereinafter discuss, which point unmistakably to the fact that, if found, it was his money.

The issue before the trial court was whether or not the testimony of Charles Digbie, brother of decedent, and Ruth Hodge, supported collaterally by some other evidence, should be believed or the denial by the widow of the direct evidence of these two witnesses should be accepted, which denial was supported by Eddie Tucker and certain other collateral testimony. Manifestly, if Charles Digbie and his girl friend, Ruth Hodge, are to be believed, there is no doubt that the widow and Charles Digbie went into the basement at 562 Edwards Street, a few nights after decedent's death and that Charles Digbie, at the direction of the widow, dug up a box; that this box was taken upstairs and in the presence and with the assistance of Charles and Ruth, the widow there counted $45,000.00, paper money which had been wrapped in packages of $1000.00 each; that Charles, at the direction of the widow, broke open the box and that, finding the contents too large after it had been separated to again be placed in it, another and larger container known as a tackle box was produced by Charles and the money placed in it. The widow then turned it over to Eddie Tucker who, it was testified, was driving the automobile in which the widow came to the house and they then left the premises. It is further testified that on the day succeeding the finding of the money Mr. Norman E. White, the undertaker at decedent's funeral, came to the former place of business of decedent, was there met by the widow and Charles and the undertaker was then paid more than $900.00 taken from the box into which the money had been placed on the night that it was found. All of this is specifically and categorically denied, both by the widow and by Tucker. But the trial judge had the obligation and the prerogative to test the credibility of these witnesses and others and having done so to decide the issue.

There is much testimony pro and con of the complainant, some of which is corroborative of her claim and some of which tends to refute it. There is specific evidence of one witness,

Tim Treadwell, that in June, 1945, he paid $11,875.00 which in probability went to decedent, and on January 4, 1946, he paid decedent $13,500.00. This was money that decedent had won in gambling by making hits on the numbers. Preston Greer, an associate of decedent, estimated the amount of money that he had collected from hits in June, 1945, at $32,750.00. This estimate may be quite generous and the itemization may not reach that sum but, if true, it is convincing that at the time to which the testimony refers decedent did collect large sums of money. Ross Digbie, a brother of decedent, testified that in January, 1946, he hit for $45,000.00 and more. There was also testimony by Floyd Watson, who was about the place of business of decedent during his lifetime, that shortly before his death he, together with the decedent, counted $43,000.00 belonging to him, which money was taken from a bag. There was also some testimony to effect that a considerable sum of money was taken from an old tire in and about decedent's place of business and turned over to him and that he admitted that he had placed the money in the tire. All of this testimony tends to support the claim that it would not be unusual that decedent would have as much as $45,000.00 to bury in the basement and that it was not unreasonable to conclude that he had done so. Much of this testimony respecting money may have been exaggerated. It is common knowledge that in gambling transactions the winnings are apt to be increased as the fact is told and likewise the losses are minimized or played down.

It is suggested that the Judge, in part, based his conclusion on the fact that there was no testimony to the effect that the decedent had lost money in gambling. This may not afford especially strong support for the judgment but it is but one aspect of the proof. It is obvious that had decedent played the numbers to the extent one of the witnesses testified, namely, a hundred or more dollars a day from January, 1946, to June, 1946, without a hit that this in itself would represent a loss of several thousands of dollars.

It also appears that the brother, Charles, had about $3500.00 of decedent's in Charles' possession at the time of and after his death and that this sum disappeared. It is claimed by Charles that it was lost in the gambling transactions which he conducted. There is other testimony from which it might be determined that there were others who because of their relationship to decedent might have a motive in framing the story which was told respecting the digging up of the box. All of this was a part of the picture and presented a very difficult and exasperating problem to the trial judge.

It is urged that the story supporting the complaint is fantastic, as indeed it is, and the testimony in the main is forthcoming from admitted law violators. However, some of them are telling the truth and what group is to be accepted and what group rejected was, within all reasonable limitations, the province of the trial judge. It is not necessary to point this fact out to learned counsel in this case. They are as familiar with the principles as the Court. We may not reverse this judgment on the weight of the evidence unless it is manifestly against the weight thereof. We cannot so hold and it would serve no good purpose to discuss more at length the extended testimony to be found in the bill of exceptions. We have read all of it. We cite no authority because there is no principle of law involved which is at all in doubt.

At the conclusion of the oral argument in this cause by counsel for the parties an observation was made that prejudicial error would be found in the cause if it appeared that the trial judge had visited the premises where the money was alleged to have been found and employed the evidence thus secured in reaching the judgment. An examination of the briefs and errors assigned discloses no such contention as a basis for reversal. However, since the foregoing opinion was written the matter has been the subject of correspondence with the Court by counsel for both the parties and appellant cites certain authorities in support of the proposition which we have heretofore stated.

Suffice it to say, that upon the record as it now comes to us the question sought to be urged is not exemplified. The action of the trial judge of which complaint is made appears only from the opinion which he handed down preparatory to the finding and judgment entry. It is not a part of the bill of exceptions nor is it in any form under the statute which will enable us to consider it as a part of the record.

If counsel for appellant desires to urge the error it will be necessary to bring it properly onto the record and we will order the bill of exceptions transmitted to the trial judge for diminution thereof. If this is desired, application therefor should be made within five days from the release of this opinion. If the subject matter of the bill of exceptions is enlarged and the last claimed error is exemplified, we will pass on it. If there is no diminution of the record, the judgment will be affirmed.

WISEMAN, PJ, and MILLER, J, concur.

By THE COURT.

The record in this cause has been transmitted to the trial court for diminution so that it might disclose the factual situation respecting the view of the trial judge of the premises in the cellar of which it was claimed the box containing the money, the subject of the controversy, was buried. The addition to the bill does not, in our judgment, exemplify any prejudicial error on the part of the trial judge in the view of the premises. He states he viewed the premises "so I could more intelligently construe the testimony that had been adduced here in court, * * *." The action of the trial judge, trier of the facts, is comparable to a view by a jury of premises involved in a lawsuit in which it is serving. Our Supreme Court has held in **Machader v Williams, 54 Oh St** 344, 43 N. E. 324, that the view by the jury which may be ordered in a civil action under the statute, is solely for the purpose of enabling them to understand and apply the evidence offered on the trial. It is manifest that the judge restricted the purpose of the view to the limits prescribed in the cited case.

The record further discloses that no objection was interposed or exception taken to the action of the trial judge in viewing the premises.

We adhere to our former opinion that the judgment should be affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.